SENTENCIA
Atendida la Petición de Certiorari, se expide el auto, se confirma la denegatoria de la Moción Solicitando Desestimación y se ordena que se enmiende el pliego acusatorio para que la cita de la disposición legal imputada sea el Art. 2 de la Ley Núm. 15-2011 (4 LPRA see. 1632).
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado Señor Kolthoff Caraballo emitió una opinión de conformidad, a la cual se unieron los Jueces Asociados Señores Martínez Torres y Feliberti Cintrón. El Juez Asociado Señor Rivera García hizo constar la expresión siguiente:
Estoy conforme con el resultado expuesto en esta Sentencia en lo que respecta únicamente a la improcedencia de la desestimación de la acusación solicitada por el peticionario Sr. Randiel Cordero Meléndez.
La Jueza Asociada Oronoz Rodríguez emitió una opinión de conformidad. El Juez Asociado Señor Estrella Mar *703 tínez emitió una opinión disidente. La Jueza Asociada Señora Pabón Charneco no interviene.
(Fdo.) María I. Colón Falcón

Secretaria del Tribunal Supremo Interina

Opinión de conformidad emitida por el
Juez Asociado Señor Kolthoff Caraballo, a la cual se unieron los Jueces Asociados Señores Martínez Torres y Feliberti Cintrón.
El caso de autos nos invitaba a que este Tribunal precisara dos asuntos medulares. Primeramente, aclarar nuestros pasados pronunciamientos en Pueblo v. Hernández Villanueva, 179 DPR 872 (2010), en cuanto al principio de especialidad. En segundo lugar, determinar la naturaleza y aplicación del Art. 2 de la Ley Núm. 15-2011 (4 LPRA see. 1632).
I
Los hechos del caso relevantes a la controversia son los siguientes.
La noche del 24 de abril de 2013, personal del Departamento de Corrección y Rehabilitación presuntamente incautó un teléfono celular al Sr. Randiel Cordero Meléndez (peticionario o Cordero Meléndez) en las inmediaciones de una institución penal sin que este estuviera autorizado para poseerlo. Los oficiales correccionales se percataron de un comportamiento de Cordero Meléndez que les pareció sospechoso, y al proceder a registrar su celda, descubrieron una bolsa plástica en el área del sanitario con un teléfono celular en su interior. Por lo anterior, el Ministerio Público imputó al peticionario haber infringido el Art. 277 del Código Penal de 2012 (33 LPRA see. 5370).
*704 El 13 de septiembre de 2013 se celebró la vista preliminar, en la cual el Tribunal de Primera Instancia determinó “no causa probable” para acusar por el delito imputado. Inconforme con tal determinación, ese mismo día el Ministerio Público solicitó la vista preliminar en alzada. Posteriormente, el 16 de septiembre de 2013 el Estado presentó por escrito su solicitud formal de vista preliminar en alzada, y el foro de instancia procedió a citarla para el 24 de septiembre de 2013.
En la celebración de la vista preliminar en alzada, el Ministerio Público sentó a testificar a varios de los oficiales que estuvieron involucrados en la alegada incautación del teléfono celular la noche del 24 de abril de 2013. Estos en esencia testificaron sobre como intervinieron con el acusado la noche del incidente y el trámite administrativo de seguimiento que se realizó. En particular, el oficial investigador de querellas administrativas explicó el proceso mediante el cual los confinados son orientados a raíz de la Ley Núm. 15-2011, “sobre que no pueden tener ningún tipo de celular dentro de la institución”.(1)
Por su parte, la trabajadora social del Departamento de Corrección y Rehabilitación testificó haber realizado la entrevista de entrada al señor Cordero Meléndez en la cual fue orientado específicamente sobre las consecuencias de violar la prohibición sobre posesión de teléfonos celulares según la Ley Núm. 15-2011, supra.(2) El certificado de orientación del acusado del 26 de noviembre de 2012, en el cual se evidenciaba que se le instruyó sobre la Ley Núm. 15-2011, fue estipulado por la Defensa y el Ministerio Público como evidencia durante la vista.(3)
Así las cosas, la Defensa alegó la violación al principio de especialidad. Esto pues, el señor Cordero Meléndez era procesado por el Art. 277 del Código Penal, supra, a pesar *705 de la existencia de la Ley Núm. 15-2011, ley especial que regula la conducta imputada. En su oportunidad, el Ministerio Fiscal explicó que no había presentado el caso según la ley especial, pues no contaba con evidencia que sustentara la capacidad del artefacto de establecer comunicación.
En la referida vista, el Tribunal de Primera Instancia determinó causa por el delito imputado, el Art. 277 del Código Penal, supra. Por lo anterior, el 26 de septiembre de 2013 se presentó una acusación contra el peticionario en la cual se imputó que
[...] ilegal, voluntaria, maliciosa, criminalmente, siendo confinado de una institución penal del Estado Libre Asociado de Puerto Rico, tenía en su posesión equipo de telecomunicación no autorizado por el Departamento de Corrección, que permite el acceso a la red celular de telecomunicaciones, consistente en un teléfono celular color negro, de la compañía ATT, con chip y batería(4)
Luego de las solicitudes del descubrimiento de prueba, el 10 de octubre de 2013, la representación legal del señor Cordero Meléndez presentó una Moción Solicitando Desestimación (Enmendada) al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRA Ap. II.(5) En esta moción alegó nuevamente que se había incumplido con el principio de especialidad al acusar por el delito general incluido en el Código Penal de 2012 y no por la ley especial. Art. 2 de la Ley 15-2011, supra. Además, expresó que el Ministerio Público estaba obligado a acusar por la ley especial. No obstante, añadió que tampoco esta procedía pues había ausencia total de prueba sobre los elementos esenciales del delito especial aplicable a los hechos.
El Tribunal de Primera Instancia celebró una vista para atender la Moción Solicitando Desestimación y posteriormente la declaró “no ha lugar”. Inconforme, el peticionario *706 acudió ante el Tribunal de Apelaciones y solicitó la revocación de la determinación del foro de instancia. Luego de evaluar el asunto, el tribunal apelativo se negó a expedir el recurso, por entender que era frívolo.
El 29 de abril de 2014, el peticionario recurrió ante esta Curia por medio de un recurso de certiorari y una Moción Solicitando Paralización de los Procedimientos en Auxilio de Jurisdicción, en los cuales solicitó la revocación de los tribunales a quo. El 2 de mayo de 2014 emitimos una resolución declarando “ha lugar” la moción en auxilio de jurisdicción y concedimos 20 días a la parte recurrida para que mostrara causa por la cual no debíamos revocar al Tribunal de Apelaciones. El 27 de mayo de 2014 la parte recurrida presentó su posición, por lo que procedemos a resolver con el beneficio de la misma.
II

Concurso de disposiciones penales y el principio de especialidad

Recientemente, la Asamblea Legislativa, en su ejercicio de promulgar y modificar nuestro estado de derecho, aprobó la Ley Núm. 246-2014, mediante la cual se enmienda sustancialmente nuestro Código Penal. El Art. 9 del Código Penal, 33 LPRA see. 5009, sobre el principio de especialidad, se enmendó para que lea de la manera siguiente:
Artículo 9.— Concurso de disposiciones penales.
Cuando la misma materia se regula por diversas disposiciones penales:
(a)La disposición especial prevalece sobre la general.
(b)La disposición de mayor alcance de protección al bien jurídico absorberá la de menor amplitud, y se aplicará la primera.
(c)La subsidiaria aplicará sólo en defecto de la principal, si se declara expresamente dicha subsidiaridad, o ésta se infiere.
Sin embargo, luego de la enmienda el artículo quedó *707 configurado como se encontraba antes de aprobado el Código Penal del 2012. En lo pertinente a nuestra controversia, el principio de especialidad quedó inalterado, incluso luego de aprobado el Código Penal de 2012, por lo que no se ve afectada la interpretación que le hemos dado en el pasado. Esto pues, la porción relacionada dicta que, cuando la misma materia se regula por diversas disposiciones penales, la disposición especial prevalece sobre la general. En Pueblo v. Hernández Villanueva, supra, este Tribunal discutió a fondo el principio de especialidad. A pesar de ello, algunas de las expresiones que hiciéramos en aquel entonces se han prestado a confusión, por lo que resulta conveniente que nos expresemos nuevamente en torno a la figura y aclaremos el asunto.
Como bien dijéramos, el principio de especialidad establece que “[c]uando un mismo hecho se regula por diversas disposiciones penales: (a) [l]a disposición especial prevalece sobre la general”.(6) Este principio es el encargado de determinar cuál es la disposición penal que debe regir la situación cuando hay más de un precepto penal de aplicación a una misma conducta delictiva.(7) Para que el principio de especialidad aplique es requerido que concurran ante un mismo hecho varias disposiciones penales que guardan una relación de género a especie.(8) Por nuestra parte, en Pueblo v. Hernández Villanueva, supra, expresamos que el concurso de leyes ocurre “cuando a una misma acción le son aplicables dos o más disposiciones penales que se excluyen entre sí”. (Enfasis suprimido).(9)
No obstante, es menester aclarar que cuando en Pueblo v. Hernández Villanueva, supra, hicimos referencia a que *708 ambos estatutos deben ser mutuamente excluyentes —o que debe existir un conflicto entre estos—, no nos referíamos al contenido de los delitos en sí, sino a que ambas disposiciones no pueden ser aplicadas simultáneamente. Ambos delitos tienen que regular la misma conducta. Es esencialmente esta la razón para que resulten mutuamente excluyentes, ya que por mandato constitucional no se puede castigar por ambas disposiciones al mismo tiempo, pues ambas regulan la misma conducta.(10) Es decir, en el concurso aparente de leyes, “el hecho está igualmente comprendido en varias disposiciones legales, pero éstas, lejos de ser susceptibles de aplicación conjunta, son incompatibles entre sí”. (Enfasis en el original).(11)
En este contexto, las expresiones de la Honorable Jueza Asociada Señora Rodríguez Rodríguez en su opinión disidente en Pueblo v. Hernández Villanueva, supra, pág. 913, no eran contradictorias a nuestras expresiones, puesto que establecían que “el llamado concurso aparente de leyes supone un conflicto entre dos disposiciones que aparentan ser igualmente aplicables a un mismo hecho precisamente porque inicialmente ninguna excluye a la otra”. (Enfasis nuestro y en el original). Ciertamente ninguna excluye a la otra por su contenido, sino que no pueden ser aplicadas simultáneamente.
Por otra parte, hemos expresado que esta situación representa un concurso aparente, porque el propio ordena *709 miento jurídico ofrece los criterios para determinar la aplicabilidad de una u otra disposición penal en cada caso concreto. Para que este conflicto —el tener que decidir qué delito aplica— sea real, el ordenamiento jurídico tendría que guardar silencio en cuanto a cómo se resolvería, pero afortunadamente no es así.(12)
Conforme a lo anterior, el principio de especialidad descarta la discreción del Estado, pues hace mandatoria la aplicación del estatuto especial sobre el general. Es decir, en realidad el Estado no se encuentra en posición de tomar la decisión, sino que el propio ordenamiento jurídico establece el curso de acción por seguir. En cuanto a la determinación de la relación de especialidad, la Prof.a Dora Neva-res expresa lo siguiente:
La relación de especialidad puede darse de varias maneras. Primero, cuando se trata de una disposición especial y una disposición de carácter general dentro de la misma ley. El ejemplo de esta situación es el caso de los tipos simples y agravados de un delito. Si consideramos el tipo simple como la disposición de carácter general y el tipo agravado como la disposición de carácter especial, encontramos que el primero está en una relación de género a especie con el segundo. El tipo agravado contiene todos los elementos de la disposición general, o sea del tipo simple, pero además incluye uno o más elementos que lo particularizaran. [...]
La relación de especialidad puede también darse al comparar una ley especial con una ley general, como lo es el Código Penal, e.g., Pueblo v. Mena, 113 DPR 275 (1982) (Ley de Instituciones Hipotecarias y Código Penal), Pueblo v. Ramos Rivas, 171 DPR 826 (2007) (reincidencia bajo Ley de Sustancias Controladas y Código Penal); o entre dos leyes especiales, una de las cuales está en relación a la otra de especie a género. Pueblo v. López Pérez, 106 DPR 584 (1977) (Ley de Caza y Ley de Armas); Pueblo v. Hernández Villanueva, 179 DPR 872 (2010) (ver op. J. Rodríguez). (Énfasis nuestro).(13)
*710 Como podemos observar, la relación de especialidad no se limita únicamente al supuesto en el cual se trate de una disposición especial y una disposición de carácter general dentro de la misma ley, sino que también aplica al comparar una ley especial con una ley general como lo es el Código Penal. Por otra parte, aclaramos que lo importante es determinar si con la ley en cuestión, la Asamblea Legislativa pretende dar un trato especial a la conducta específicamente legislada, distinto del tratamiento dado a la conducta general. En otras palabras, una ley no se considera del tipo especial frente al Código Penal meramente por haber sido aprobada fuera del mismo.
Para determinar la especialidad, hay que estudiar la conducta prohibida y regulada por ambos estatutos. Para ello, se debe ir primeramente a los elementos constituidos de la conducta que ambos prohíben. Esto es, un precepto es más especial que otro cuando requiere, además de los presupuestos igualmente exigidos por este segundo, algún otro presupuesto adicional. Un ejemplo comúnmente utilizado es que si un precepto requiere los presupuestos a + b y otro los presupuestos a + b + c, el segundo es más especial que el primero.(14) Por la naturaleza de esta relación de especialidad, la misma puede darse entre dos o más estatutos independientemente de si ambos pertenecen al Código Penal o no.
Sin embargo, limitar el principio de especialidad al aspecto de los delitos menores incluidos en otros, trastocaría el verdadero sentido del principio de especialidad que es establecer cuál estatuto debe aplicar ante la situación en la cual uno regula un conjunto de conductas generales, mientras que el otro es uno diseñado y aprobado especialmente para la situación imputada. Así, existe la extraña posibilidad —como en el caso de autos— en la cual, por designio legislativo, los elementos requeridos para la comisión del delito *711 aparentan ser básicamente los mismos. En dicha situación, la relación de especialidad ha de establecerse según las características y el propósito de ambos estatutos. Como veremos a continuación, la Asamblea Legislativa quiso darle un trato especial a la conducta prohibida de poseer un teléfono celular en una institución penal sin estar autorizado, frente al delito general de poseer un objeto prohibido que pudiera afectar el orden o la seguridad de una institución penal sin estar autorizado.
III

Aplicación del Art. 2 Ley Núm. 15-2011, ante el texto del Art. 277 del Código Penal de 2012

El Art. 277 del Código Penal lee como sigue:
Toda persona que introduzca, venda o ayude a vender, o tenga en su poder con el propósito de introducir o vender drogas narcóticas, estupefacientes o cualquier sustancia controlada o armas de cualquier clase, bebidas alcohólicas o embriagantes, explosivos, proyectiles, teléfonos celulares, u otros medios de comunicación portátil o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, a un confinado, a sabiendas de que es un confinado, será sancionada con pena de reclusión por un término fijo de tres (3) años.
Toda persona confinada en una institución penal o juvenil que, sin estar autorizado, posea teléfonos celulares u otros medios de comunicación portátil, o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, será sancionado^ con pena de reclusión por un término fijo de tres (3) años. (Enfasis nuestro). 33 LPRA see. 5370.
Como se puede observar, este estatuto prohíbe de manera general la posesión e introducción de objetos que pudieran afectar el orden o la seguridad de una institución penal. Entre las conductas que prohíbe se encuentra que *712 una persona confinada en una institución penal o juvenil posea, sin estar autorizado, un teléfono celular. Según el propio estatuto, tal violación será sancionada con pena de reclusión por un término fijo de 3 años.
Por otra parte, al hacer el mismo análisis a la disposición contenida en la ley especial, Art. 2 de la Ley Núm. 15-2011, supra, descubrimos que este artículo fue aprobado específicamente para penalizar el poseer equipos de telecomunicación no autorizados en una institución penal. Ello, provoca que cuando el equipo incautado sea uno de telecomunicaciones, se activa el principio de especialidad y obliga al Estado a aplicar este estatuto y no así el general contenido en el Art. 277 del Código Penal, supra. Veamos.
El Art. 2 de la Ley Núm. 15-2011, supra, dispone, en lo pertinente, lo siguiente:
La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. (Énfasis nuestro).
De esta forma, igual que en el Art. 277 del Código Penal, supra, el Art. 2 de la Ley Núm. 15-2011, supra, prohíbe la posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados. Entre la especie de equipos de telecomunicación no autorizados, el artículo a modo de ejemplo especifica teléfonos celulares. Además de los teléfonos celulares, el legislador quiso prohibir cualquier artefacto que haga las mismas funciones que un teléfono celular, por lo que se incluyó la frase, “cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución”.
Es decir, si la persona se encontrara en posesión de un *713 artefacto —que no sea un teléfono celular— y se pretende acusar según este estatuto, el Estado no solo tendrá que probar la posesión del artefacto, sino también la capacidad del mismo de ejercer las funciones típicas del teléfono celular. Como sabemos, esta parte no es de aplicación al caso de autos, toda vez que el equipo incautado al acusado fue un teléfono celular, que por definición es un equipo de telecomunicación. Ello pues, este fue expresamente prohibido en la porción explicativa del estatuto, y enfatizado por el legislador con la frase “incluyendo teléfonos celulares”.
Lo anterior cobra mayor sentido lógico cuando nos percatamos que la ley especial, en su parte introductoria, establece que el propósito para su aprobación es “establecer como política pública [...] facultar al Departamento de Corrección y Rehabilitación y las Administraciones adscritas al mismo a diseñar e implantar estrategias para la detección, rastreo y desactivación de equipos celulares o de telecomunicaciones no autorizados dentro de sus instituciones [...]”. (Enfasis nuestro).(15) Incluso, la Asamblea Legislativa ex-plica en su exposición de motivos que “debe considerarse como delito o falta de por sí la posesión de equipos de telecomunicación no autorizados en la institución penal o juvenil, así como el acto de proveer dichos equipos a la población”. (Énfasis suplido).(16)
De igual forma, la Ley Núm. 15-2011 (4 LPRA see. 1631 et seq.) establece claramente entre sus propósitos penalizar la posesión y el uso no autorizado de equipos de telecomunicaciones, incluyendo el teléfono celular, en las instituciones penales y juveniles de Puerto Rico. Así, distinto de la teoría del peticionario, concebimos que la frase referente a la capacidad de comunicación, modifica únicamente los términos “equipo o aditamento” y la misma es independiente del término “teléfono celular”. Esto, pues entre ambos términos hay una conjunción copulativa que sirve como división gra *714 matical para separar los mismos. El estatuto específicamente cita “incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión[...]”. (Enfasis nuestro). Por ello, es que la frase que aduce a la capacidad de transmitir es requerida únicamente a cualquier tipo de equipo o aditamento, no así a teléfonos celulares. Nuevamente, un teléfono celular es, por definición, un equipo de telecomunicación.(17)
Entonces, resulta imperativo deducir que cuando el legislador utilizó el término “equipo de telecomunicaciones” se refería a equipos como los teléfonos celulares. El legislador utilizó una frase explicativa para señalar que no se limitara únicamente a teléfonos celulares, sino además, a cualquier otro equipo o aditamento que pudiera igualar las propiedades comunicativas de los teléfonos. Es decir, “cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet”.(18)
A raíz de lo anterior, según la teoría del peticionario la posesión no autorizada de un teléfono celular en una institución penal o juvenil no constituye la conducta prohibida hasta tanto se compruebe la capacidad del teléfono. Es decir, con tan solo extraer el “SIM Card” de los teléfonos celulares, la persona internada en una institución penal o juvenil no comete la conducta prohibida, pues el teléfono celular no sería capaz de acceder a la red de comunicaciones. Esta teoría me parece errada y contraria a la intención legislativa.
Un examen más técnico sobre el lenguaje del Art. 2 de la Ley Núm. 15-2011, supra, ayuda a entender un poco mejor la naturaleza del estatuto y complementar nuestra *715 interpretación. El texto expreso del artículo dicta, en lo pertinente, lo siguiente:
La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. (Énfasis nuestro). 4 LPRA see. 1632.
Al extraer la porción explicativa —parte enfatizada— el artículo leería como sigue:
La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad.
Como podemos observar, la oración no pierde su sentido lógico y esto se debe a que esta porción entre comas (,) de la oración es utilizada a modo de ejemplo o explicación de lo que constituye un “equipo de telecomunicación”. Así pues, la expresión incluyendo teléfonos celulares, es utilizada por el legislador a modo de explicación. De lo contrario, la situación antes señalada sobre el simple acto de extraer el “SIM Card” de un teléfono celular, burlaría el sentido de este estatuto, ya que al no tener capacidad de transmisión, la posesión del teléfono celular no constituiría la conducta prohibida. Esto a pesar de que la intención legislativa pretendía penalizar la posesión de equipos de telecomunicaciones.
IV
En síntesis, en las circunstancias de este caso no existe un conflicto real, pues el Ministerio Público no tiene discreción alguna en cuanto a qué estatuto ha de aplicar. Como *716 mencionamos, una vez establecido que ambos estatutos regulan la misma conducta, el principio de especialidad obliga al Estado a aplicar la legislación que atiende especialmente la situación. Es decir, en el caso que nos ocupa, el Ministerio Público está obligado a aplicar la disposición contenida en el Art. 2 de la Ley Núm. 15-2011, supra, y no el estatuto general del Código Penal.
Conforme a toda la discusión vertida en esta Opinión, es evidente que el texto expreso de la acusación cumple cabalmente con el mandato constitucional de debido proceso de ley, al notificar adecuadamente sobre la conducta por la cual se le procesa al acusado. Así, el peticionario fue debidamente notificado de la conducta prohibida en el Art. 2 de la Ley Núm. 15-2011. Cabe señalar que es precisamente por esta conducta que se le halló causa en vista preliminar en alzada. Esto es, que de forma
[...] ilegal, voluntaria, maliciosa, criminalmente, siendo confinado de una institución penal del Estado Libre Asociado de Puerto Rico, tenía en su posesión equipo de telecomunicación no autorizado por el Departamento de Corrección, que permite el acceso a la red celular de comunicaciones, consistente en un teléfono celular color negro, de la compañía ATT, con chip y batería.(19)
En ocasiones pasadas hemos determinado que lo importante es que el contenido de la acusación establezca todos los elementos de la conducta que se imputa, independientemente que la calificación de la acusación no se atempere a su contenido. En lo relativo, hemos expresado específicamente que la calificación del delito “hecha por el Fiscal no es definitiva, ya que son los hechos alegados en la acusación, y no las etiquetas formales, los que deben servir de base para la verdadera identificación del delito imputado y de la disposición estatutaria envuelta”.(20) Así, en aquellos *717 casos en los cuales “existe un conflicto entre los hechos probados y la calificación del delito que es en sí una conclusión y, entre ambos, los hechos deben predominar”.(21)
Cónsono con lo anterior, la Regla 35(d) de Procedimiento Criminal, establece que la acusación debe contener “[l]a cita de la ley, reglamento o disposición que se alegue han sido infringidos, pero la omisión de tal cita o una cita errónea se considerará como un defecto de forma”. (Enfasis nuestro).(22) En lo pertinente, la Regla 36 de Procedimiento Criminal instituye que “[u]na acusación o denuncia no será insuficiente, ni podrán ser afectados el juicio, la sentencia o cualquier otro procedimiento basados en dicha acusación o denuncia, por causa de algún defecto, imperfección u omisión de forma que no perjudicare los derechos sustanciales del acusado”.(23)
Así, el texto de la acusación contra el señor Cordero Meléndez por la cual se le encontró causa probable en vista preliminar en alzada contenía todos y cada uno de los elementos esenciales de la conducta tipificada en el Art. 2 de la Ley 15-2011, supra. Por ello, el curso de acción apropiado es considerar una enmienda de forma según establecido en el inciso (a) de la Regla 38 de Procedimiento Criminal, 34 LPRA Ap. II, para que la calificación de la acusación vaya acorde con el contenido de la misma. Esto es, que la acusación sea calificada según el Art. 2 de la Ley Núm. 15-2011, supra.
Opinión de conformidad emitida por la
Jueza Asociada Oronoz Rodríguez.
Estoy conforme con la Sentencia que hoy emite este Tribunal por entender que procede acusar por el delito esta *718 tuido en el Art. 2 de la Ley Núm. 15-2011 (Ley Núm. 15), infra. Sin embargo, ante la situación excepcional que presenta el caso de autos considero necesario emitir ciertas expresiones con relación al principio de especialidad según codificado en el Art. 9 del Código Penal de 2012, infra, y el principio de favorabilidad. Art. 4 del Código Penal de 2012, infra.
I
El 24 de abril de 2013, el Sr. Randiel Cordero Meléndez se encontraba confinado en el Complejo Correccional Las Cucharas en Ponce cuando presuntamente un oficial de custodia encontró en su celda un teléfono celular. Como consecuencia, se presentó una denuncia contra el señor Cordero Meléndez por infringir el Art. 277 del Código Penal de 2012 (33 LPRA sec. 5370).(1) Posteriormente, se halló causa para arresto y se fijó una fianza de $25,000. Se celebró la vista preliminar y, debido a que el Tribunal no encontró causa para acusar, el Ministerio Público solicitó una vista preliminar en alzada. En ésta, se trajo a colación que el Ministerio Público presentó la denuncia por una infracción al Art. 277 del Código Penal, supra, y no por el Art. 2 de la Ley Núm. 15 (4 LPRA see. 1632),(2) en presunta *719 violación al principio de especialidad. El Ministerio Público expresó que, según su interpretación, el Art. 2 de la Ley Núm. 15, supra, requiere como elemento del delito que se demuestre que el celular estaba conectado a la red celular de comunicaciones, mientras que para acusar por el Art. 277 del Código Penal, supra, basta con la mera posesión del celular.(3) Sustentado en lo anterior, el Ministerio Público presentó la denuncia por el Art. 277 del Código Penal, supra, ya que, según alegó, no tenía constancia de que el celular estuviese conectado a la red el día de los hechos. La representante legal del señor Cordero Meléndez indicó que conforme al principio de especialidad, el Ministerio Público no tenía discreción para acusar por la ley penal general.(4) Luego de la argumentación correspondiente, el Tribunal de Primera Instancia determinó causa para acusar y consecuentemente el señor Cordero Meléndez fue acusado por infracción al Art. 277 del Código Penal, supra.(5)
Subsiguientemente, el señor Cordero Meléndez presentó una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRA Ap. II. Alegó que, por virtud del principio de especialidad, el delito aplicable era el Art. 2 de la Ley Núm. 15, supra, y no el Art. 277 del Código Penal, supra. Además, argumentó que en virtud de lo anterior procedía la desestimación porque *720 hubo una ausencia total de prueba sobre los elementos del delito en la vista preliminar en alzada. El Ministerio Público se allanó a la determinación del Tribunal.
El Tribunal de Primera Instancia declaró “no ha lugar” la moción de desestimación presentada por el señor Cordero Meléndez. Determinó que la acusación se realizó conforme a derecho debido a que en la vista preliminar en alzada se demostró que éste tenía un teléfono celular en su celda sin autorización para poseerlo.
Insatisfecho, el señor Cordero Meléndez presentó un recurso de certiorari ante el Tribunal de Apelaciones. Argumentó que erró el foro inferior al determinar que le aplicaba el Art. 277 del Código Penal, supra, y no el Art. 2 de la Ley Núm. 15, supra. El Tribunal de Apelaciones denegó el auto de certiorari por entender que el recurso instado por el señor Cordero Meléndez era frívolo. Razonó que los delitos en controversia eran radicalmente distintos debido a que el delito imputado en el Código Penal penalizaba la mera posesión del celular en la institución correccional, mientras que el delito incluido en la ley especial penalizaba el uso de celulares para cometer fraudes u otros delitos desde la cárcel.
Inconforme, el señor Cordero Meléndez acudió ante este Tribunal mediante una petición de certiorari y una Moción Solicitando Paralización de los Procedimientos en auxilio de Jurisdicción. Alegó que el Tribunal de Apelaciones erró al no expedir el recurso presentado, confirmando así la determinación del Tribunal de Primera Instancia de declarar “no ha lugar” la moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, supra. El 2 de mayo de 2014, emitimos una resolución paralizando los procedimientos y concedimos a la parte recurrida veinte días para que mostrara causa por la cual no se debía revocar la resolución dictada por el foro apelativo intermedio.
El Ministerio Público compareció y argumentó que el principio de especialidad no aplica porque las dos disposi *721 dones en controversia tipifican de manera idéntica la conducta antijurídica que penalizan, por lo cual no hay una relación de género a especie entre ambas.(6) Señaló que la frase “que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución” incluida en el Art. 2 de la Ley Núm. 15, supra, no constituye un elemento adicional, sino que es una proposición subordinada adjetiva especificativa que busca describir lo que constituye un equipo o aditamento.(7) Asimismo, indicó que al caso de autos le aplica el principio de alternatividad por entender que las penas son distintas y que procede aplicar el delito que conlleve la pena más grave.(8)
En esencia, nos corresponde resolver si a la situación ante nuestra consideración le aplica el principio de especialidad y, como consecuencia, si procede la desestimación de la acusación. Veamos.
II
A. En el ámbito penal ocurre un concurso aparente de leyes si con relación a un hecho delictivo parecen concurrir varias disposiciones penales, pero en realidad solo una ha sido infringida. L.E. Chiesa Aponte, Derecho penal sustantivo, 2da ed., [s. 1.], Publicaciones JTS, 2013, pág. 81. Cuando se está ante este tipo de concurso, nuestro ordenamiento provee ciertas normas de interpretación para facilitar la resolución de los casos y determinar cuál disposición *722 va a prevalecer en su aplicación. L.E. Chiesa, Derecho penal sustantivo, 81 (Núm. 2) Rev. Jur. UPR 343, 352 (2012).
Una de estas normas es el principio de especialidad codificado en el Art. 9 del Código Penal de Puerto Rico de 2012 (33 LPRA see. 5009). Éste dispone que “[c]uando la misma materia se regula por diversas disposiciones penales: (a) [l]a disposición especial prevalece sobre la general”. íd.(9) Dicho principio aplica cuando ante un mismo hecho concurren dos disposiciones que tienen entre ellas una relación de género a especie.(10) D. Nevares-Muñiz, Derecho penal puertorriqueño: parte general, 7ma ed. rev., San Juan, Instituto para el Desarrollo del Derecho, 2015, pág. 130. Según el Prof. Luis E. Chiesa, “una ley es especial solamente cuando es idéntica de todo punto a la ley general, con la única diferencia de que en la ley especial se añaden elementos adicionales que no están contemplados en la ley general”. Chiesa, Derecho penal sustantivo, supra, pág. 353. Véanse, además: Pueblo v. Calderón Álvarez, 140 DPR 627, 644 (1996); Pueblo v. López Pérez, 106 DPR 584, 586 (1977). Asimismo, el tratadista Santiago Mir Puig ex-plica que “[u]n precepto es más especial que otro cuando requiere, además de los presupuestos igualmente exigidos por este segundo, algún otro presupuesto adicional: si un precepto requiere los presupuestos a + b y otro los presupuestos a + b + c, el segundo es más especial que el primero”. S. Mir Puig, Derecho penal: parte general, 8va *723 ed., Barcelona, Ed. Reppertor, 2008, pág. 654. En esencia, “[t]odo aquel hecho que realiza el precepto especial realiza necesariamente el tenor literal del general, pero no todo hecho que infringe el precepto general realiza el tenor literal del especial”. íd. Véase Pueblo v. Ramos Rivas, 171 DPR 826, 837 (2007).
Lo anterior puede ocurrir entre una ley especial y una ley general, entre dos disposiciones de una misma ley o entre dos leyes especiales. D. Nevares-Muñiz, Código penal de Puerto Rico, 3ra ed. rev., San Juan, Instituto para el Desarrollo del Derecho, 2015, pág. 20. Véanse: Pueblo v. Ramos Rivas, supra, pág. 836; Pueblo v. López Pérez, supra, pág. 586. A modo de ejemplo, el delito de robo está en una relación de especialidad con el delito de apropiación ilegal, ya que el primero requiere que se realice una apropiación ilegal, pero le añade un elemento adicional, que haya mediado fuerza o violencia. Chiesa Aponte, Derecho penal sustantivo, op. cit., pág. 81.
Al aplicarse el principio de especialidad para resolver un concurso aparente, la disposición especial va a prevalecer sobre la general, excepto que por legislación se disponga lo contrario. Nevares-Muñiz, Derecho penal puertorriqueño: parte general, op. cit., pág. 131. Se aplica la ley especial porque se entiende que el propósito de promulgarla es desplazar o excluir la general, ya que “quien realiza el tipo específico siempre consuma el genérico, mientras que a la inversa no sucede lo contrario”. Pueblo v. Ramos Rivas, supra, pág. 837. Cabe mencionar que cuando se aplica una de las normas de interpretación a un concurso de leyes, como lo es el principio de especialidad, el juzgador carece de discreción para elegir la disposición que desea utilizar, sino que éste queda obligado a aplicar el precepto indicado según la regla aplicable al concurso aparente en controversia. Chiesa, Derecho penal sustantivo, supra, págs. 350-352.
*724 B. En 1974 se adoptó en nuestro Código Penal el principio de favorabilidad, cuyo origen es puramente estatutario. Pueblo v. González, 165 DPR 675, 684 (2005). Al amparo de éste procede la aplicación retroactiva de una ley penal cuando favorece a la persona imputada de delito. Pueblo v. Hernández García, 186 DPR 656, 673 (2012). Actualmente, el principio está codificado en el Art. 4 del Código Penal, 33 LPRA see. 5004, el cual dispone, en lo pertinente, que:
La ley penal aplicable es la vigente al momento de la comisión de los hechos.
La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
(a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho.
Dicho principio tiene como propósito evitar la aplicación arbitraria e irracional de la ley penal. Chiesa Aponte, Derecho penal sustantivo, op. cit., pág. 59. Ello porque “el principio republicano de gobierno exige la racionalidad de la acción del estado y esta es afectada cuando, por la mera circunstancia de que un individuo haya cometido el mismo hecho con anterioridad a otro, se lo [sic] trate más rigurosamente”. íd., pág. 59, citando a E.R. Zaffaroni, Derecho Penal: parte general, 2da ed., Ed. Ediar, 2002, pág. 122.
En síntesis, el principio de favorabilidad incluido en el Art. 4 del Código Penal de 2012, supra, “aplicará a conducta delictiva realizada a partir del 1 de septiembre de 2012 cuando se apruebe una ley que sea más favorable que el Código Penal según vigente al momento de aprobación de la ley posterior con respecto a la situación de la persona”. Nevares-Muñiz, Derecho penal puertorriqueño: parte general, op. cit., pág. 102. Claro está, siempre que la ley posterior no *725 tenga una cláusula de reserva que impida su aplicación retroactiva. Id. La ley favorable podrá surgir mientras se está procesando al imputado, al momento de imponerle la sentencia o durante el término que está cumpliendo la misma. Art. 4 del Código Penal, supra. Asimismo, los cam-bios que se aplicarán retroactivamente pueden ser en cuanto a la tipificación del delito, sus atenuantes, las causas de exclusión de responsabilidad, los requisitos de prueba, así como disposiciones procesales. Nevares-Muñiz, Código penal de Puerto Rico, op. cit., pág. 10.
Cabe mencionar que la Ley Núm. 246-2014, la cual recientemente enmendó el Código Penal de 2012 (33 LPRA see. 5001 et seq.), no contiene una cláusula de reserva que prohíba su aplicación retroactiva. Nevares-Muñiz, Derecho penal puertorriqueño: parte general, op. cit., pág. 102. Ello porque mediante dicha ley la Legislatura tuvo la intención de “disponer penas rehabilitadoras en delitos menos graves y en delitos graves de severidad intermedia; además de disponer para el ejercicio de la discreción judicial mediante criterios que orienten al ejercerla”. íd.
C. Dado que lo que está ante nosotros es una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, supra, procede discutir brevemente las normas aplicables. La Regla 64 de Procedimiento Criminal, supra, establece los fundamentos que un acusado tiene a su disposición para solicitar la desestimación de la denuncia o acusación. L.E. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Editorial Forum, 1993, Vol. III, pág. 217. En lo pertinente al caso ante nos, el inciso (p) de la Regla 64 le permite al acusado solicitar la desestimación porque no se determinó causa probable conforme a derecho. Pueblo v. Negrón Nazario, 191 DPR 720, 734-735 (2014); Pueblo v. Rivera Vázquez, 177 DPR 868, 877-878 (2010). Si se trata de un delito me-nos grave, se impugna la determinación de causa probable para arresto mientras que, de tratarse de uno grave, se *726 impugna la determinación de causa probable para acusar, ya sea en vista preliminar o vista preliminar en alzada. Pueblo v. Jiménez Cruz, 145 DPR 803, 813—816 (1998).
Hemos reconocido que, al amparo de la Regla 64(p) de Procedimiento Criminal, supra, el acusado puede impugnar la determinación de causa por dos fundamentos: (1) insuficiencia de la prueba, o (2) cuando se haya violado algún derecho procesal que se tenía que garantizar en la vista correspondiente. Pueblo v. Negrón Nazario, supra, pág. 735; Pueblo v. Rivera Vázquez, supra, pág. 878. En cuanto al fundamento relacionado a la prueba presentada, solo procede la desestimación cuando se determina que hay ausencia total de prueba, “ya sea porque no se presentó alguna evidencia sobre un elemento del delito imputado o porque no se presentó alguna evidencia sobre la conexión del acusado con el delito”. (Énfasis suprimido). Pueblo v. Negrón Nazario, supra, pág. 736.
Por otro lado, la Regla 66 de Procedimiento Criminal, 34 LPRA Ap. II, establece que el tribunal debe denegar una moción de desestimación si ésta se basa en defectos de la acusación, denuncia o pliego de especificaciones que pueden subsanarse mediante enmienda. Véase Pueblo v. Rivera Vázquez, supra, pág. 880. A su vez, la Regla 67 de Procedimiento Criminal, 34 LPRAAp. II, dispone que la desestimación al amparo de la Regla 64 de Procedimiento Criminal, supra, no impide que se comience un nuevo proceso penal, a menos que se trate de un defecto insubsanable o de la desestimación de un delito menos grave por no cumplir con los términos de juicio rápido. Ambas reglas se refieren a defectos en el pliego acusatorio o de particulares, los cuales pueden ser de forma o sustanciales. Pueblo v. Rivera Vázquez, supra, págs. 881-882.
El defecto de forma es subsanable, no afecta los derechos sustanciales del acusado y no hace insuficiente el pliego. 34 LPRAAp. II, R. 36. Éste puede enmendarse en *727 cualquier momento y, de no enmendarse, el defecto queda subsanado al recaer el fallo o veredicto. 34 LPRA Ap. II, R. 38(a). Un ejemplo de este tipo de defecto es que se omita o se cite erróneamente en la acusación la ley o disposición que presuntamente se infringió. 34 LPRA Ap. II R. 35(d). En cambio, el defecto sustancial afecta algún derecho sustancial del acusado porque le impide preparar adecuadamente su defensa o porque hace insuficiente la acusación, denuncia o pliego. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, op. cit., pág. 24. En ese caso, el tribunal podrá permitir en cualquier momento antes de la convicción o absolución del acusado las enmiendas necesarias. 34 LPRA Ap. II, R. 38(b). De enmendarse y tratarse de una acusación, procede una nueva lectura de la misma. Id. En cambio, si se trata de una denuncia, el acusado tiene derecho a que se celebre el juicio cinco días después de la enmienda. Id.
D. Por último, al examinar los delitos en controversia surge que ambos penalizan la posesión no autorizada por parte de un confinado de un teléfono celular, sin que uno de los dos requiera algún elemento adicional. La frase “posesión [...] de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet”, incluida en el Art. 2 de la Ley Núm. 15, supra, no implica que se tiene que demostrar que el celular estaba conectado, sino que lo menciona como un ejemplo de lo que constituye un equipo de telecomunicación en sí.
A modo de ejemplo, en el Art. 1 de la Ley Núm. 15 se expresa que “[e]n Puerto Rico ha proliferado la práctica de introducir equipos personales de telecomunicaciones, incluyendo teléfonos celulares, en las instituciones penales y juveniles y se ha detectado su uso frecuente para realizar o coordinar actividades ilícitas desde la institución”. (Enfasis *728 suplido). 4 LPRA see. 1631.(11) El texto de la ley es claro y demuestra lo inescapable: que el teléfono celular es un equipo de telecomunicación y que, como tal, tiene la capacidad de conectarse a la red celular de comunicaciones. Por otro lado, en caso de que el confinado tenga en su posesión otro equipo o aditamento, que no sea un celular, se debe demostrar que dicho objeto tiene la capacidad de permitir la transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet para que se entienda cometido el delito.(12) Ello porque la Asamblea Legislativa aprobó la Ley Núm. 15 para penalizar a los confinados por el uso irrestricto y sin autorización de los medios de comunicación, los cuales se utilizan con gran frecuencia, para cometer actividades ilícitas como fraude, intimidación de testigos, hostigamiento a víctimas de violencia doméstica, la planificación de asesinatos, entre otras. Exposición de Motivos de la Ley Núm. 15-2011, (Parte 1) Leyes de Puerto Rico 1145-1147.
Expuesto el derecho aplicable, procederemos a analizar la controversia ante nuestra consideración.
III
Luego de examinar con detenimiento los elementos de ambos delitos —que como mencionamos son idénticos— entiendo que el principio de especialidad no aplica en este caso. Ello porque no hay una relación de género a especie entre ambos delitos. En otras palabras, ninguno de los dos contiene un elemento adicional que lo haga más especial *729 que el otro en su aplicación, aspecto requerido para que aplique el principio de especialidad. Chiesa, Derecho penal sustantivo, supra, pág. 353; Mir Puig, op. cit., pág. 654; F. Muñoz Conde y M. García Arán, Derecho penal: parte general, 7ma ed. rev., Valencia, Ed. Tirant Lo Blanch, 2007, págs. 467-468. Por lo tanto, a diferencia de lo expresado por el Juez Asociado Señor Kolthoff Caraballo en su opinión de conformidad,(13) no procede recurrir al propósito y a las características de ambos estatutos para establecer la relación de especialidad, ya que, una vez se determina que ninguno de los dos delitos conlleva un elemento adicional, no hay una relación de género a especie entre ambos y no aplica el principio.
Explicado esto último, sucede que al momento en que ocurrieron los hechos tanto el Art. 277 del Código Penal, supra, como el Art. 2 de la Ley Núm. 15, supra, tenían una pena de reclusión por un término fijo de 3 años.(14) Sin embargo, estando el caso ante nuestra consideración, se aprobó la Ley Núm. 246-2014 que enmendó el Art. 307 del Código Penal, 33 LPRA see. 5415, de tal forma que la pena del delito incluido en el Art. 2 de la Ley Núm. 15, supra, cambió de una pena de reclusión por un término fijo de 3 años a
[...] una pena de reclusión [sic] restricción terapéutica, restricción domiciliaria, servicios comunitarios, o combinación de estas penas, por un término fijo que no puede ser menor de seis (6) meses un (1) día ni mayor de tres (3) años, según la presencia de atenuantes o agravantes a la pena. En tal caso, la *730 persona puede ser considerada para libertad bajo palabra por la Junta de Libertad bajo Palabra al cumplir el cincuenta (50) por ciento del término de reclusión impuesto.
Es decir, a pesar de que al momento de la comisión de los hechos tanto los elementos como la pena de ambos delitos eran idénticos, mientras se procesaba al acusado uno de esos delitos se enmendó y su pena ahora le es más favorable. Al analizar la situación excepcional en la cual nos encontramos, así como el principio de favorabilidad según expuesto previamente, procede acusar por el delito estatuido en el Art. 2 de la Ley Núm. 15, supra. Lo anterior porque, a pesar de estar ante dos delitos que penalizan exactamente la misma conducta, esa conducta se desvaloró en una de las dos disposiciones. Ello conllevaría que el señor Cordero Meléndez, por el mismo acto, esté sujeto a la posible aplicación de dos penas distintas —una más favorable que la otra— lo cual dependerá del artículo por el cual el Ministerio Público lo acuse. La situación anterior demuestra precisamente la arbitrariedad e irrazonabilidad que se quiere evitar por medio del principio de favorabilidad.
A pesar de que estamos aplicando el principio de favorabilidad a una situación que no es típica, porque el delito cuya pena fue enmendada favorablemente durante el transcurso del procedimiento penal no fue el delito por el cual se le acusó, considero que este es el curso correcto. Según esbozamos, el principio de favorabilidad tiene como fin evitar que a un individuo se le trate más rigurosamente que a otro por el mero hecho de que cometió el mismo acto con anterioridad al otro individuo. Ello sería contrario a la racionalidad que se espera en las acciones del Estado. Sería igualmente arbitrario que un error del legislador —de codificar la misma conducta en dos estatutos distintos y luego enmendar uno de esos estatutos para incluir una pena más favorable— tenga como consecuencia que a dos individuos que incurran en la misma conducta (en el caso de autos poseer, sin autorización, un teléfono celular en *731 una institución penal) se les castigue con penas distintas, dependiendo del delito que le impute el Ministerio Público. El derecho no puede prestarse para resultados absurdos. En conclusión, y por lo anteriormente expuesto, procede que se acuse al señor Cordero Meléndez por el Art. 2 de la Ley Núm. 15, supra, en virtud de dicho principio.
Con relación a la desestimación solicitada por el señor Cordero Meléndez, y contrario a lo que éste señala, no hay una ausencia total de la prueba, ya que, según lo determinó el Tribunal de Primera Instancia, en la vista preliminar en alzada se demostró que éste tenía un teléfono celular en su celda sin autorización para poseerlo, conducta que también penaliza el Art. 2 de la Ley Núm. 15, supra.(15) El curso correcto es enmendar la cita de la disposición que presuntamente se infringió. 34 LPRA Ap. II, R. 35(d). Por lo tanto, no erraron los tribunales inferiores al proveer “no ha lugar” a la desestimación solicitada.
IV
En virtud de lo expuesto, estoy conforme con la Sentencia que hoy emite este Tribunal por entender que procede acusar por el Art. 2 de la Ley Núm. 15, supra, en virtud del principio de favorabilidad.

 Véase Apéndice, pág. 85.

 íd., pág. 86.

 íd., pág. 10.

 íd., pág. 11.

 Previamente, el 9 de octubre de 2013 se había presentado una primera Moción Solicitando Desestimación, la cual fue enmendada.

 Pueblo v. Hernández Villanueva, 179 DPR 872, 891 (2010).

 íd., págs. 891-892. Véase, además, L. Jiménez de Asúa, Tratado de derecho penal, 2da ed., Buenos Aires, Ed. Losada, 1958, T. II, pág. 540.

 D. Nevares-Muñiz, Derecho penal puertorriqueño, 6ta ed. rev., San Juan, Instituto para el Desarrollo del Derecho, 2010, pág. 128.

 Pueblo v. Hernández Villanueva, supra, pág. 893, citando a su vez a A. Arroyo de las Heras, Manual de derecho penal: el delito, Pamplona, Ed. Aranzadi, 1985, pág. 812.

 Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1; Blockburger v. United States, 284 US 299 (1932). En cuanto al principio de especialidad, este opera cuando “ano o varios hechos son ineluibles en varios preceptos penales de los que sólo uno puede aplicarse, puesto que su estimación conjunta supondría un bis in idem [doble exposición]”. (Énfasis suprimido). S. Mir Puig, Derecho penal: parte general, 8va ed., Barcelona, Ed. Reppertor, 2008, págs. 652. En lo pertinente, este Tribunal se expresó sobre este principio en el contexto del delito especial de desacato por peijurio y del delito de peijurio según tipificado en el Código Penal. Véanse: Pueblo v. Pérez Casillas, 117 DPR 380, 390 esc. 6 (1986); S.P. Amadeo, El poder de los tribunales en Puerto Rico para castigar por desacato, Madrid, Ed. Rev. Der. Privado, 1961, pág. 100 esc. 15, discutiendo Pueblo v. Valcourt, 18 DPR 484 (1912).

 Pueblo v. Hernández Villanueva, supra, pág. 893, citando a su vez a Arroyo de las Heras, op. cit. Véase, además, la opinión disidente de la Juez Asociada Señora Rodríguez Rodríguez en Pueblo v. Hernández Villanueva, supra, pág. 912.

 Pueblo v. Hernández Villanueva, supra, pág. 892. Véase, además, L. Jiménez de Asúa, La ley y el delito: principios de derecho penal, 3ra ed., Buenos Aires, Ed. Sudamericana, 1984, págs. 141-142.

 D. Nevares-Muñiz, Código penal de Puerto Rico, 2da ed., San Juan, Instituto para el Desarrollo del Derecho, 2013, págs. 20-21.

 S. Mir Puig, Derecho penal: parte general, 8va ed., Barcelona, Ed. Reppertor, 2008, pág. 654.

 Ley Núm. 15-2011, (Parte 1) Leyes de Puerto Rico 1144-1145.

 Exposición de Motivos de la Ley Núm. 15-2011, supra, pág. 1146.

 Conforme a la definición del Diccionario de la lengua española, de la Real Academia Española, un equipo de telecomunicaciones es aquel perteneciente a un “[s]istema de comunicación telegráfica, telefónica o radiotelegráfica y demás análogos”. http://lema.rae.es/drae/?val=telecomunicaci%C3%B3nica (última visita, 14 de noviembre de 2014). Por otra parte, dicho diccionario define telefónica como “[perteneciente o relativo al teléfono o a la telefonía”, http://lema.rae.es/drae/ ?val=telef%C3%B3nica (última visita, 14 de noviembre de 2014).

 Art. 2 de la Ley Núm. 15-2011 (4 LPRA see. 1632).

 Véase Apéndice, pág. 11.

 Pueblo v. Bermúdez, 75 DPR 760, 763-764 (1954). Véanse, además: Pueblo v. Seda, 82 DPR 719,727 (1961); Pueblo v. Conroig, 60 DPR 168 (1942); Pueblo v. Canals, 48 DPR 794 (1935).

 Pueblo v. Candelaria Couvertier, 100 DPR 159, 161 (1971).

 Regla 35(d) de Procedimiento Criminal, 34 LPRAAp. II.

 Regla 36 de Procedimiento Criminal, 34 LPRAAp. II.

 Para efectos de esta Opinión de conformidad haré referencia al Art. 277 del Código Penal, Ley Núm. 146-2012 (33 LPRA see. 5370), a pesar de que al momento de presentarse la denuncia la numeración del artículo era 275. Véanse: Ley Núm. 10-2013; Ley Núm. 124-2013. El referido Art. 277 dispone, en lo pertinente:
“Toda persona confinada en una institución penal o juvenil que, sin estar autorizado, posea teléfonos celulares u otros medios de comunicación portátil, o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, será sancionadla] con pena de reclusión por un término fijo de tres (3) años”.

 En lo pertinente, el Art. 2 de la Ley Núm. 15-2011 (4 LPRA see. 1632), dispone:
“Tbda persona ingresada en una institución penal o juvenil de cualquier nivel de seguridad sólo podrá hacer uso de aquellos medios de comunicación que sean autorizados para su uso por la administración de la institución. La autoridad responsable de la reglamentación de la institución fijará condiciones básicas de accesibilidad, tiempo, lugar, cantidad y frecuencia de estas comunicaciones, que estarán sujetas a sufrir restricciones adicionales como parte de medidas disciplinarias o de seguridad.
*719 “La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad”.

 Apéndice, págs. 87-88.

 íd., págs. 88-89.

 La acusación presentada describía el delito de la manera siguiente:
“El referido acusado, Randiel Cordero Meléndez, allá en o para el 24 de abril de 2013, y en Ponce, Puerto Rico, (...) ilegal, voluntaria, maliciosa, criminalmente, siendo confinado de una institución penal del Estado Libre Asociado de Puerto Rico, tenía en su posesión equipo de telecomunicación no autorizado por el Departamento de Corrección, que permite el acceso a la red celular de comunicaciones, consistente en un teléfono celular color negro, de la compañía ATT, con chip y batería”. Apéndice, pág. 11.

 Escrito en cumplimiento de orden, pág. 8.

 íd., pág. 9.

 íd., pág. 10. El Ministerio Público sostiene que el Art. 277 del Código Penal, supra, tiene una pena más grave. Al momento de la comisión del delito y del comienzo del procedimiento criminal, la pena de ambos delitos era de reclusión por un término fijo de 3 años. Sin embargo, estando el caso ante nuestra consideración, entró en vigor la Ley Núm. 246-2014 (Ley Núm. 246) y modificó la pena correspondiente al Art. 2 de la Ley Núm. 15, supra.

 El Art. 9 del Código Penal, 33 LPRA see. 5009, fue enmendado por la Ley Núm. 246 para añadir expresamente dos principios que pueden ser de aplicación ante un concurso aparente de normas, los cuales son el principio de subsidiariedad y consunción.

 En Pueblo v. Hernández Villanueva, 179 DPR 872 (2010), este Tribunal resolvió que para que aplicara el principio de especialidad se tenía que estar ante dos o más disposiciones que regularan la misma materia y que fueran incompatibles de tal manera que se excluyeran entre sí. Id., págs. 893-894. Contrario a lo que se resolvió, no es necesario que las disposiciones estén en conflicto y sean incompatibles para que apliquen las normas del principio de especialidad. “Para eso precisamente es que existe el concurso de leyes: para resolver casos en los que —a pesar de no haber un conflicto entre las disposiciones aparentemente aplicables-— existen razones de peso para aplicar un precepto sobre otro”. L.E. Chiesa, Derecho penal sustantivo, 81 (Núm. 2) Rev. Jur. UPR 343, 349 (2012). Por eso, considero que procede revocar dichos pronunciamientos.

 Véase, además, la Exposición de Motivos de la Ley Núm. 15-2011 (4 LPRA sees. 1631-1635), en la cual se indica que “[c]ualquier persona razonable debe concluir que el uso libre e irrestricto de medios de comunicación, incluyendo la telefonía celular, es uno de los privilegios de la libre comunidad que la persona que comete un delito o falta pierde como parte de la reclusión o institucionalización que se le impone por haber violentado el contrato social”. 2011 (Parte 1) Leyes de Puerto Rico 1145.

 Esa es la única lectura razonable y lógica del estatuto en cuestión. Por otra manera, el confinado no comete el delito con solo extraer del celular el “SIM Card”, a pesar de tener un equipo de telecomunicación no autorizado.

 Opinión de conformidad emitida por el Juez Asociado Señor Kolthoff Carabailo, págs. 710-711.

 El Art. 277 del Código Penal, supra, expresamente dispone que conlleva una pena de reclusión por un término fijo de 3 años. Por otro lado, el Art. 2 de la Ley Núm. 15, supra, dispone que constituirá delito grave de cuarto grado, lo cual al momento en que ocurrieron los hechos también conllevaba una pena de reclusión por un término fijo de 3 años al amparo del Art. 307 del Código Penal, 33 LPRA see. 5415, por ser un delito grave tipificado en una ley penal especial bajo el sistema de clasificación de delitos del Código Penal de 2004, Ley Núm. 149-2004, y no tener pena estatuida. Así, al momento de los hechos los elementos del delito eran idénticos y las penas también.

 Debido a que ambos delitos tienen los mismos elementos, al acusado se le notificó adecuadamente la conducta imputada. El hecho de que proceda modificar la acusación para que sea por el Art. 2 de la Ley Núm. 15, supra, y no por el Art. 277 del Código Penal, supra, en nada le afecta. Por el contrario, como ya hemos mencionado, le favorece.